This appeal is taken by appellants Jason Cooper ("Jason") and Becky Montgomery ("Becky") from a judgment on the Court of Common Pleas of Hancock County, Juvenile Division, granting permanent custody of Shawn and Melissa Montgomery to the Hancock County Department of Human Services, Child protective Services Unit ("CPSU").
Jason and Becky were involved in a long-term relationship that produced two children: Shawn (D.O.B. January 13, 1992) and Melissa (D.O.B. January 18, 1995). Although Jason and Becky never married, they lived together and jointly raised their children. In February of 1996, CPSU started providing in-home services to Jason and Becky. On June 6, 1996, CPSU filed a complaint alleging Shawn and Melissa were neglected and dependent. A hearing was held on June 18, 1996, and the parents agreed to protective supervision. On July 5, 1996, CPSU requested that Shawn be removed from the home as allegations of abuse had arisen. CPSU filed an amended complaint on July 11, 1996. On July 18, 1996, a hearing was held on the amended complaint and temporary custody of Shawn and Melissa was granted to CPSU. A dispositional hearing was held on August 8, 1996.
A case plan was prepared with the goal being to reunite the children with their parents. Supervised visits were started, then changed to unsupervised. The visits were in Becky's home[1], but Jason was a regular visitor with the children while they were at Becky's. From December 1996, until December 1997, the children had overnight visitation in Becky's home. These overnight visits continued after CPSU filed a motion for permanent custody on May 5, 1997. On June 12, 1997, a motion for psychological evaluations of Becky and Jason were filed. Dr. Carol Patrick conducted these evaluations on July 17, 1997. The overnight visits ceased after CPSU received the psychological reports on Jason and Becky. However, both Jason and Becky continued to visit with the children for four hours on Friday at Becky's home.
On June 8 and 9, 1998, a hearing on the motion for permanent custody was held. The trial court granted CPSU's motion on June 15, 1998. It is from this judgment that appellants appeal.
Jason asserts the following assignments of error:
 It was error for the trial court to apply the best interest standard when determining that the children should be placed in permanent custody but to fail to consider the impact terminating the parent-child relationship would have on the children where best interest is not defined.
 It was error for the trial court to grant the motion of CPSU for permanent custody of the children where CPSU failed to include Jason in services under the caseplan appropriate to his cognitive and functional level and by so doing making it possible for him to succeed with goals of the caseplan with the ultimate goal of reunification with the children.
Becky claims the following assignments of error:
 The trial court erred in granting permanent custody to CPSU because the agency failed to make reasonable and diligent efforts to reunite the children with either parent.
 The trial court erred when it found it would be in the best interest of the minor children to be permanently committed to CPSU.
 The trial court erred in awarding permanent custody to CPSU because that decision was contrary to the manifest weight of the evidence.
A reviewing court may not reverse a custody determination unless the trial court has abused its discretion. Pater v.Pater (1992), 63 Ohio St.3d 393, 588 N.E.2d 794. An abuse of discretion implies an attitude of the trial court that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. "A decision is unreasonable if there is no sound reasoning process that would support that decision." AAAA Enterprises, Inc. v.River Place Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157,161, 553 N.E.2d 597, 601.
In Jason's first assignment of error and Becky's second assignment of error, they argue that the trial court erred by not considering the impact the termination of parental rights would have on the children. Thus, they claim that the termination of parental rights was not in the best interests of the children.
 (B) The court may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 * * *
 (C) In making the determinations required by this section * * * a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child.
 * * *
 (D) In determining the best interest of a child at a hearing * * * the court shall consider all relevant factors, including, but not limited to, the following.
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414. Jason and Becky claim that the trial court failed to consider the bond between them and their children. However, the trial court specifically stated in its journal entry that it considered the relationship between the parents and the children. The trial court considered all the factors listed in R.C. 2151.414 as well as the unusual circumstances of this case. The trial court found that due to the special needs of the children and the special needs of the parents, it would be in the children's best interest for the agency to have permanent custody. Since there is evidence in the record to support this finding, we find no abuse of discretion. These assignments of error are overruled.
Jason's second assignment of error claims that the trial court erred by granting permanent custody to CPSU when CPSU failed to include him in services under the caseplan. Jason argues that CPSU failed to offer him services that would permit him to be reunified with his children. Instead, CPSU tailored its services to attempting to reunify the children with Becky. Although the record shows that Jason was not included in all of the offered services, this exclusion occurred because Jason failed to utilize the services when offered. Jason was scheduled for a psychological evaluation and failed to follow through. CPSU even offered Jason transportation to various services, but the offers were refused. Despite this lack of cooperation with CPSU, Jason still participated in the home based services offered at Becky's home. He was present during almost every visitation and was given the same information that Becky received. Therefore, Jason was offered the same services that Becky was given under the caseplan. Jason's second assignment of error is overruled.
In Becky's first assignment of error, she claims that the agency failed to make reasonable and diligent efforts to reunite the children with either parent. The trial court found that CPSU did make reasonable and diligent efforts to reunify the family. CPSU offered Becky a variety of services, including counseling, parenting classes, and home based parenting instruction. Although Becky knew what was needed to improve her parenting skills, she did not complete them. After two years, none of the service providers could state that Becky had made such progress that they would recommend placing the children back into her custody. In addition, Becky still denied that any problem existed and was not fully cooperating with the service providers. Since there is evidence to support the trial court's finding, Becky's first assignment of error is overruled.
Becky's final assignment of error claims that the trial court's judgment was against the manifest weight of the evidence. In reaching its conclusion, the trial court looked to the services offered to the parents and their failure to fully utilize them, the failure of the parents to remedy the conditions causing the original removal, the limited mental functioning ability of the parents, the psychological problems suffered by the parents, and the special needs of the children. The parents were both offered psychological examinations after the children were removed. Although Becky did follow through with the examination and the counseling, Jason did not. The parents still had not learned how to effectively supervise and discipline their children. The parents did not fully cooperate with the service providers. Evidence was presented that Shawn suffers from autism and epileptic seizures and that Melissa has behavioral problems. The parents, who both have limited mental capabilities, are not capable of properly dealing with these problems. Although there is no doubt that Jason and Becky love their children, the evidence supports the trial court's determination that the best interest of the children is served by granting CPSU permanent custody. Becky's third assignment of error is overruled.
The judgments of the Court of Common Pleas of Hancock County is affirmed.
Judgments affirmed.
SHAW and HADLEY, JJ., concur
[1] Sometime after the original complaint, Jason and Becky separated and Jason moved to his mother's home. Becky lived alone for a short while, then she moved in with Mr. Lyn Bower, Jason's former brother-in-law.